## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAPHNE ZWEIFEL,

       *Plaintiff*,

    v.

MICROSOFT CORPORATION, *et al.*,

       *Defendant*.

Civil Action No. 23-3002 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Daphne Zweifel brings this suit against her former employer, Microsoft Corporation, as well as her former supervisors and coworkers Dan Coleman, Heidi Kobylski, and Sameh Abouissa (collectively, "Defendants"), for violations of federal and state law that Zweifel alleges occurred during her employment at Microsoft.  Zweifel alleges that while she worked as a "Strategic Account Executive/Account Director" for Microsoft in the District of Columbia, she was subject to a hostile work environment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act and the D.C. Human Rights Act ("DCHRA").  *See* Dkt. 14-1 at 13–18 (Am. Compl. ¶¶ 61–84, 93–118).  She also alleges that Microsoft violated the D.C. Payment and Collection of Wages Law ("DCPCWL") by withholding her year-end "Commitment Based Incentive" payment for 2022, *id.* at 4, 18–19 (Am. Compl. ¶¶ 18, 119–26), and that Defendant Abouissa defamed her by falsely accusing her of violating Microsoft's anti-harassment and anti-discrimination policies, *id.* at 15–26 (Am. Compl. ¶¶ 85–92).

Defendants move under 28 U.S.C. § 1404(a) to transfer the case to the U.S. District Court for the Western District of Washington.  Dkt. 7-1.  They argue that a forum selection clause in a contract that Zweifel signed as a condition of her employment with Microsoft applies to this

dispute and compels the transfer of this case.  *Id.* at 1.  The individual Defendants, although not parties to Zweifel's contract with Microsoft, consent to transferring the case to the Western District of Washington.  For the reasons explained below, the Court **DENIES** Defendants' motion to transfer.

**A.**

Federal law requires that plaintiffs bring suit "in the proper venue" to "ensure[ ] that a district with some interest in the dispute or nexus to the parties adjudicates the plaintiff's claims."  *Hamilton v. JPMorgan Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015). Generally, venue is proper in a district (1) where any defendant resides (if all reside in that state); (2) where a substantial portion of the events giving rise to the suit occurred; or (3) if "there is no district in which an action may otherwise be brought," in any district in which a defendant is subject to personal jurisdiction.  28 U.S.C. § 1391(b).  Title VII, however, has its own venue provision, which provides that a Title VII case:

> may be brought [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).  "Where a case involves more than one cause of action," as here, "venue must be proper as to each claim."  *Relf v. Gasch*, 511 F.2d 804, 807 n.12 (D.C. Cir. 1975); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3807 (4th ed. 2018).  Here, it appears that venue is proper in the District of Columbia for all of Zweifel's claims.  At all relevant times, Zweifel allegedly worked for Microsoft in the District of Columbia alongside Defendants Coleman, Kobylski, and Abouissa, *see* Dkt. 14-1 at 2 (Am.

2

Compl. ¶¶ 5–9), and the events giving rise to this suit stem from their interactions while employed by Microsoft.[1]

That said, venue is not jurisdictional, and parties can agree to litigate certain claims in certain fora. *See Henkin v. Islamic Republic of Iran*, No. 18-cv-1273, 2021 WL 2914036, at *18 (D.D.C. July 12, 2021) (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). When the parties to a dispute have done so by entering into a contract that contains a valid forum selection clause, the defendant may seek to enforce their agreement by moving to transfer the case pursuant to 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013); *see also* 28 U.S.C. § 1404(a) (permitting a court to transfer a case to "any other district or division where it might have been brought" for the "convenience of [the] parties and witnesses, in the interest of justice"). A valid and applicable forum-selection clause is "given controlling weight in all but the most exceptional cases." *D & S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1212–13 (D.C. Cir. 2020) (quoting *Atl. Marine*, 571 U.S. at 63).

Here, neither party disputes that prior to starting work at Microsoft, Zweifel digitally signed an agreement with Microsoft, titled "Microsoft Corporation Employee Agreement," which imposes certain requirements on Microsoft employees "[a]s a condition of [their] employment" and which includes a forum selection clause. Dkt. 15-2 at 2. The forum selection clause provides that the "exclusive venue . . . for any action arising out of [that] Agreement shall lie in state or federal court located in King County, Washington." *Id.* at 6. Microsoft maintains that all of Zweifel's claims stem from her employment at Microsoft and that, as a result, her

---

[1]    Defendants do not contend otherwise in their motion to transfer, nor do they assert lack of venue as an affirmative defense in their answer, Dkt. 16.

claims "arise out of" the "Microsoft Corporation Employee Agreement." Zweifel disagrees and advances for a less capacious interpretation of the forum selection clause. Because Zweifel has the better reading of the agreement, Microsoft's transfer motion fails.

To determine whether a forum selection clause applies to a particular cause of action, courts interpret the scope of the clause "using normal principles of contract interpretation." *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019). Under those principles, "the plain and unambiguous meaning of an instrument is controlling." *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit Ins. Corp.*, 109 F. Supp. 3d 179, 197 (D.D.C. 2015) (quoting *WMATA v. Mergentime Corp.*, 626 F.2d 959, 960–61 (D.C. Cir. 1980)). Here, the Court starts with the phrase "arising out of," which the D.C. Circuit has interpreted to refer to "'a causal connection,' not merely a 'logical' one." *N. American Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1260 (D.C. Cir. 2020) (citation omitted) (quoting *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074–75 (3d Cir. 1997) (Alito, J.)); *id.* (explaining that "'arise' out of means 'to originate from a specified source'" (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (Sotomayor, J.))). Accordingly, for an "action" to "arise out of" the "Microsoft Corporation Employee Agreement," it must originate from the agreement. *See also Azima*, 926 F.3d at 878 (describing a forum selection clause that applies only to "claims arising out of the Settlement Agreement itself" as the "most restrictive" version of such a clause).[2]

---

[2]    Although "action" is a broader term than "claim," it is narrower than "dispute." *See Azima*, 926 F.3d at 873 (finding a forum selection clause that applied to "[t]his Settlement Agreement and any dispute or claim arising out of, or in connection with, it or its subject matter or formation (including, without limitation, any contractual or non-contractual disputes, claims or obligations)"). The term "action" refers to an assertion of legal rights in a judicial proceeding. In contrast, the term "dispute" refers more generally to a disagreement among parties that may or may not involve a lawsuit. *Compare* Action, Black's Law Dictionary (11th ed. 2019) ("A civil or criminal judicial proceeding."), *with* Dispute, Black's Law Dictionary ("A conflict or controversy, esp. one that has given rise to a particular lawsuit."), *and* Claim, Black's Law

Microsoft argues that Zweifel's claims "originate" from the agreement because the agreement concerns Zweifel's employment, as do Zweifel's claims.  The Court does not agree.  As an initial matter, it is important to note that the agreement at issue is not a general employment agreement that covers any of the terms and conditions of employment that are at issue here, such as compensation or benefits.  Instead, the agreement principally concerns the protection of Microsoft's intellectual property.  Of it seventeen paragraphs, eleven touch on intellectual-property and related issues, such as trade secrets, copyrights, non-disclosure, non-competition, conflicts of interest, and ownership of employee-generated intellectual property.  *See generally* Dkt. 15-2 (¶¶ 1, 3–12).  Two of the remaining six paragraphs concern Microsoft's remedies in the event of a breach of the agreement, *id.* (¶¶ 15–16), one paragraph declares Microsoft harmless for personal property loss, *id.* (¶ 14), and one paragraph contains the forum selection clause, *id.* (¶ 17).  Most notably, none of paragraphs have anything to do with Zweifel's compensation or any other privileges, benefits, working conditions, responsibilities, or hours related to her employment.  It is thus hard for the Court to see how Zweifel's claims, which sound in employment discrimination and wage-and-hour laws, could possibly "arise out of"—that is, originate from—"this Agreement."

To be sure, the "Microsoft Corporation Employee Agreement" does provide that the signatory's "employment with Microsoft . . . is terminable at will," Dkt. 15-2 at 2, and Zweifel's discrimination and retaliation claims depend in part on her establishing the unlawfulness of her termination, Dkt. 14-1 at 12–13 (¶ 59).  *See* Dkt. 15-1 at 5.  But that is where the relationship between Zweifel's claims and the contract end.  As far as the Court can discern on the present

Dictionary ("An interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing.").

record, whether Zweifel will be able to establish that her termination was unlawful will not depend in any way on the terms of the contract; Zweifel will prevail on those claims if her termination is attributable to an impermissible motive, regardless of whether she was an at-will or for-cause employee.

Stepping back, Microsoft also argues that even if no specific contractual provision is implicated by any of Zweifel's claims, the contract, as a whole, is germane to her claims because those claims all depend on her establishing the existence of a contractual, employment relationship between herself and Microsoft, *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 122 (D.D.C. 2008); see Dkt. 15-1 at 5 (quoting *Cheney*, 583 F. Supp. 2d at 122), and the "Microsoft Corporation Employee Agreement" is evidence of such a relationship. Microsoft is of course correct that, to prevail on her claims, Zweifel must prove that she was an "employee" of Microsoft, *see Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C. Cir. 1979) (Title VII); *Miles v. Univ. of the Dist. of Columbia*, No. 12-cv-378, 2013 WL 5817657, at *8 (D.D.C. Oct. 30, 2013) (DCHRA); *Perez v. C.R. Calderon Constr., Inc.*, 221 F. Supp. 3d 115, 138 (D.D.C. 2016) (DCPCWL). But even if the "Microsoft Corporation Employee Agreement" might constitute evidence of her employment, the agreement constitutes just one of many ways that Zweifel might establish this non-controversial fact; it would be far easier, for example, for Zweifel just to point to Microsoft admission that she "worked as an Account Executive and Strategic Account Director (L65) for Microsoft in Washington, D.C.," Dkt. 9 at 3 (Answer ¶ 12); *see also id*. at 2–3 (Answer ¶¶ 5, 10, 11). But even more importantly, the fact that the agreement might constitute *evidence* of the existence of an employment relationship does not mean that Zweifel's Title VII, the DCHRA, and the D.C. wage laws claims "*arise out of*" the agreement. Just like the agreement, her paystubs and W-2s might constitute *evidence* of her employment, yet no one

6

would suggest that her claims "*arise out of*" those documents.  The same is true for the agreement.

In asking the Court to reach a different conclusion, Microsoft cites to several decisions from this Court that it argues support transferring the case.  But as the D.C. Circuit has cautioned, "[d]rawing analogy to other [forum selection clause] cases is useful only to the extent those other cases address contract language that is the same or substantially similar to that at issue" because "whether or not a forum-selection clause applies depends on what the specific clause at issue says" and what claims the movant asserts fall within that clause.  *Azima*, 926 F.3d at 879 (emphasis omitted) (quoting *John Wyeth*, 119 F.3d at 1075).  Here, the cases Microsoft cites differ in material respects from this one:  they involve broader forum selection clauses or breach of contract claims.  *See Samirah v. Dist. Smiles, PLLC*, No. 20-cv-03076, 2021 WL 918082, at *1 (D.D.C. Mar. 10, 2021) (finding that a forum selection clause that applied to "[a]ny suit involving any dispute or matter arising under the Agreement" encompassed a breach of contract claim); *Edebiri v. N. Highland Co. LLC*, No. 20-cv-00758, 2020 WL 5411303, at *1 (D.D.C. Sept. 9, 2020) (same regarding a forum selection clause that concerned "any and all claims arising out of or relating to this Agreement").

Moreover, although this Court has held that similarly worded *arbitration* clauses encompass wage-and-hour claims, *see Cruz v. Jimenez Constr. LLC*, No. 20-cv-1978, 2023 WL 3040443, at *1 (D.D.C. Apr. 21, 2023) (considering an agreement that provided that "any dispute arising from this Agreement shall be resolved through mediation"), and employment discrimination claims, *see Dowley v. Dewey Ballantine, LLP*, No. 05-cv-622, 2006 WL 1102768, at *1 (D.D.C. Apr. 26, 2006) (considering an arbitration clause that applied to any "controversy or claim arising out of this Agreement"), those decisions turn on the unique rules that govern the

enforcement of arbitration clauses.  When interpreting the scope of an arbitration clause, courts are required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Air Line Pilots Ass'n v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C. Cir. 2005) ("Doubts should be resolved in favor of coverage" under the arbitration clause.).  Consistent that approach, the Court reasoned in those cases that because the claims at issue arguably "touched on" the subject matter of the contracts, the arbitration clause should be treated as controlling.  No analogous principle applies when interpreting the scope of a forum selection clause.  As a result, these arbitration-clause cases are of little help here.

Finally, the partial integration clause contained in the agreement offers no assistance to Microsoft's argument.  That clause merely provides that the "[a]greement sets forth the entire agreement" between the parties "as to the subjects discussed herein."  Dkt. 15-2 at 6 (¶ 17).  Because the Court concludes that agreement has no bearing on Zweifel's claims in this case— that is, the "subjects discussed" in the agreement are unrelated to Zweifel's claims—the integration clause also has no bearing on her claims.

## B.

Having concluded that the forum selection clause does not encompass Zweifel's claims against Microsoft, and that the parties have therefore not contracted to adjudicate this dispute in the Western District of Washington, the Court next considers whether it should nevertheless grant the Defendants' motion to transfer.  In resolving a motion to transfer pursuant to § 1404(a), the Court must answer two questions:  First, the Court must determine whether the case could have been brought in the transferee district.  Second, the Court must decide whether the private and public interests favor transfer.  *Udoh v. Garland*, No. 21-cv-1716, 2021 WL 5310543, at *2

(D.D.C. Nov. 15, 2021) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 127 (D.D.C. 2018)).

Defendants' motion to transfer fails at the threshold:  Defendants have not shown that this case could have been brought initially in the transferee district, the Western District of Washington.  *See Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32 (D.D.C. 2008) ("The moving party has the burden of establishing that a transfer is proper.").  As previously explained, venue must be proper for each one of the claims in an action, *see Relf*, 511 F.2d at 807 n.12, which means in this case that both the general venue provision, 28 U.S.C. § 1391(b), as well as Title VII's special venue provision, 42 U.S.C. § 2000e-5(f)(3), must be satisfied in the transferee district.  But Defendants have not shown that § 1391(b) is satisfied in the Western District of Washington.

Venue is proper under the general venue statute in three circumstances.  First, venue is proper in a district "in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Here, the amended complaint alleges that the defendants reside in different states:  Coleman and Kobylski allegedly reside in Maryland, Abouissa allegedly resides in Virginia, and Microsoft is headquartered in Washington.  Dkt. 14-1 at 2 (Am. Compl. ¶¶ 6–9).  Venue is also proper under § 1391(b)(2) where "a substantial part of the events or omissions giving rise to the claim occurred."  But the amended complaint alleges that those events all occurred in Washington, D.C., not the Western District of Washington.  *See generally* Dkt. 14-1 (Am. Compl.).  Finally, if "there is no district in which an action may otherwise be brought," the action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C.

§ 1391(b)(3). Here, however, there is a district in which the action can be brought—the District of Columbia—and so this safety value venue provision is inapplicable.[3]

The Court may transfer an action only to a "district where venue is also proper (*i.e.*, 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine*, 571 U.S. at 59. But the Defendants have not shown that the parties have contracted to adjudicate the case in the U.S. District Court for the Western District of Washington, nor have they established that the case might have been brought in that district originally.

---

[3] As explained, venue must be proper for all of the claims in an action. *See Relf*, 511 F.2d at 807 n.12. Accordingly, Defendants' failure to show that the general venue provision would be satisfied in the Western District of Washington is sufficient grounds to deny Defendants' motion to transfer, especially where Defendants argue against transferring some but not all of the claims in this action, *see* Dkt. 18 at 6. For the sake of completeness, the Court also notes that Defendants have failed to show that the Western District of Washington would have been an appropriate venue for Zweifel's Title VII claims.

As previously discussed, Title VII does contain its own, special venue provision, 42 U.S.C. § 2000e-5(f)(3). Title VII permits an action under that statute to be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed" and "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Here, that judicial district where the relevant events occurred is the District of Columbia, not the Western District of Washington. Title VII also provides that an action may be brought "in the judicial district in which the employment records relevant to such practice are maintained and administered." *Id.* § 2000e-5(f)(3). Microsoft, however, has not represented that it maintains relevant employment records in the Western District of Washington. Finally, the Court need not consider Title VII's safety-value venue provision because it finds that the District of Columbia is an appropriate venue for Zweifel's Title VII claims. *See James v. Booz-Allen*, 227 F. Supp. 2d 16, 24 (D.D.C. 2002).

For these reasons, it is hereby **ORDERED** that Defendants' motion to transfer, Dkt. 15, is **DENIED**.

      **SO ORDERED**.

<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS
United States District Judge

Date:  April 17, 2024